UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BOARD OF TRUSTEES OF THE LOCAL )
295/LOCAL 851 – IBT EMPLOYER GROUP )
PENSION TRUST FUND and the BOARD OF )
TRUSTEES OF THE LOCAL 295/LOCAL 851 )   Civil Case No. 12-cv-08031 (WHP)
– IBT EMPLOYER GROUP WELFARE )
FUND, )   Electronically Filed
)
   Plaintiffs, )
)
 -against- )
)
JRS TRUCKING SERVICES, INC., )
)
   Defendant. )

---

### AFFIDAVIT IN SUPPORT OF PLAINTIFFS' MOTION FOR A DEFAULT JUDGMENT AND IN SUPPORT OF ATTORNEYS' FEES AND COURT COSTS

STATE OF NEW YORK  )
          ) ss:
COUNTY OF NEW YORK )

  David P. Ofenloch, being duly sworn, deposes and says:

  1. I am an attorney at law admitted to practice before this Court.

  2. I am an associate with the law firm Cary Kane LLP, attorneys for Plaintiffs, the Trustees of the Local 295/851-IBT Employer Group Welfare Fund (the "Welfare Fund") and the Local 295/851-IBT Employer Group Pension Fund (the "Pension Fund") (collectively, the "Funds"), and am familiar with the facts of this case.

  3. This affidavit is made pursuant to Rule 55(b)(1) of the Federal Rules of Civil Procedure in support of Plaintiffs' application for judgment by default against Defendant JRS Trucking Services, Inc. Said Defendant is neither an infant nor an incompetent person.

  4. This action was commenced by the filing of a Summons and Complaint in this Court on November 5, 2012. Annexed hereto as Exhibit "A" is a copy of the Summons and Complaint.

5. A copy of the Summons and Complaint was duly served on Defendant on November 7, 2012. Proof of service of the Summons and Complaint was filed with this Court on November 14, 2012. Annexed hereto as Exhibit "B" is a copy of the Affidavit of Service.

6. Jurisdiction of this Court is invoked pursuant to Sections 502 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132 *et seq.*

7. At all times relevant to this proceeding, Defendant was a party to a collective bargaining agreement (the "Agreement") with Local Union 295, International Brotherhood of Teamsters, (the "Union"), covering the terms and conditions of employment of Defendant's bargaining unit employees who were represented by the Union. Annexed hereto as Exhibit "C" is a copy of the Agreement as well as the Extension Agreement.

8. Defendant is and/or was, at all times relevant to this proceeding, an "employer" "affecting commerce" within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and Sections 2(2), (6) and (7), of the LMRA, 29 U.S.C. §152(2), (6) and (7).

9. Pursuant to Section 18 and 19 of the Agreement, Defendant was required to make contributions to the Funds, on behalf of its employees. By its terms, the Funds are third-party beneficiaries of the Agreement.

10. Pursuant to its terms, the Agreement covers the terms and conditions of certain employees represented by the Union and employed by Defendant for all periods relevant hereto.

11. Sections 18 and 19 of the Agreement provide that certain amounts are to be paid by Defendant to the Funds, to provide certain benefits for Defendant's employees covered by the Agreement.

12. The Funds are operated pursuant to their Agreements and Declarations of Trust (the "Trust Agreements"). Annexed hereto as Exhibit "D" are copies of the Trust Agreements of the Funds, respectively.

13. Articles 4 and 7 of the Trust Agreements state that the Trustees of the Funds, Plaintiffs, shall have the authority to set forth rules and regulations governing the administration of the Fund, including penalties for delinquent contributions, and obligates Defendant to comply with such rules. Those rules are contained in the Funds' Trust Agreements.

14. The Trust Agreements also provide that the Funds' Trustees may bring any action to enforce the agreements and to recoup unpaid contributions due the Funds, plus interest, costs, liquidated damages, and attorneys' fees.

15. Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), the Trust Agreements, and the Funds' "Policy for Collection of Delinquent Contributions, Audits, and Mistaken Contributions", Plaintiffs are also entitled to interest on the unpaid contributions and liquidated damages, as well as costs and attorneys' fees incurred in collecting any amounts due. Annexed hereto as Exhibit "E" is a copy of the Funds' "Policy for Collection of Delinquent Contributions, Audits and Mistaken Contributions."

16. Section 6 of the Funds' Policy for Collection of Delinquent Contributions, Audits, and Mistaken Contributions states that "interest shall accrue on delinquent contributions from the due date at the rate of five percent (5%) over prime per annum." Further, the Policy states that "'Prime rate' shall be the prime rate of interest as determined by the Board of Governors of the Federal Reserve System on the business day the delinquency was due." The interest rate applied to Defendant's delinquent contributions was 8.25%.

17. Section 6 of the Funds' Policy for Collection of Delinquent Contributions, Audits, and Mistaken Contributions further provides that liquidated damages shall be equal to the greater of interest on the unpaid contributions or an amount equal to twenty percent (20%) of all unpaid contributions.

18. Defendant is obligated pursuant to the Agreement, the Trust Agreements, the Policy for Collection of Delinquent Contributions, Audits, and Mistaken Contributions, and ERISA to remit the appropriate contributions to the Funds in a timely matter.

19. Plaintiffs are obligated by the Agreement, Trust Agreements, Policy for Collection of Delinquent Contributions, Audits, and Mistaken Contributions, and ERISA to collect the contributions owed to the Funds on behalf of the Funds' participants.

20. Despite Plaintiffs' considerable patience and many attempts at collection, including offering potential payment plans, Defendant has ignored Plaintiffs and has failed and refused to remit the delinquent contributions owed to the Welfare Fund for the period of February through the date of the filing of this motion.

21. Despite Plaintiffs' considerable patience and many attempts at collection, including offering potential payment plans, Defendant has ignored Plaintiffs and has failed and refused to remit the delinquent contributions to the Pension Fund for the period of January through the date of the filing of this motion. Further, Defendant has also failed to remit contributions to the Pension Fund through the date of this Motion for Default Judgment. However, at this time, the Pension Fund has been unable to calculate the exact amount owed to the Fund for the period of October of 2012 through February of 2013 because it does not have Defendant's remittance reports, which Defendant is obligated to submit to the Funds on a monthly basis pursuant to the Agreement, in its possession.

22. Defendant has failed to: remit the delinquent contributions, remain current in remitting contributions to the Funds, and appear in this action as evidence by the Clerks' Certificate of Default filed with the Court.

23. Pursuant to the terms and applicable contribution rates to the Funds set forth in the CBA and based upon a review of the Funds' documents maintained in the normal course of

business, Defendant is currently delinquent to the Pension Fund in the amount of $225,193.17, including accrued interest thereon at a rate of 8.25% as of February 25, 2013, and to the Welfare Fund in the amount of $407,508.89, including accrued interest thereon at rate of 8.25% as February 25, 2013. Annexed hereto as Exhibit "F" is a true and accurate copy of the Funds' Delinquency Spreadsheets for Defendant as of January 7, 2013 and then as of February 25, 2013.

24. Plaintiffs also seek liquidated damages on the unpaid contributions, in the amount of 20% of the total unpaid contributions owed to the Funds as provided for in the Funds' Policy for Collection of Delinquent Contributions, Audits, and Mistaken Contributions and in ERISA. The liquidated damages sought by Plaintiffs herein are therefore $119,437.55 (($384,285.00 + $212,902.75) / .20).

25. Plaintiffs also seek any and all additional delinquent contributions owed to the Funds up through the date of judgment pursuant to Sections 18 and 19 of the Agreement.

26. Plaintiffs are further entitled to reasonable attorneys' fees and costs of this proceeding as provided for in the Funds' Policy for Collection of Delinquent Contributions, Audits, and Mistaken Contributions and under ERISA. The amount of reasonable attorney's fees, as set forth below, is $27,193.75 as of February 25, 2013, and the filing and service costs incurred in this litigation total in the amount of $477.50.

27. The charts and actual billing slips attached as Exhibit "G" hereto describes the attorney services rendered and are based on records maintained contemporaneously with the work performed which records are provided therewith. In summary, as of the date of filing this motion for default judgment against Defendant, there were 57.25 attorney hours billed to Plaintiffs at a blended rate of $475.00 per hour for partners and associates, including 2.25 hours of partner time by Walter Kane and 55 hours of associate attorney time for David Ofenloch. The

total fee incurred in the prosecution of this action is $27,193.75 for 57.25 attorney billable hours, which is a reasonable fee for litigation of this type in this Court.

28. The firm of Cary Kane LLP regularly represents multi-employer benefit plans in ERISA liability collections lawsuits and provides counseling to employee benefit pension and welfare plans. Cary Kane has represented ERISA plans, and the labor unions associated with such plans, since the firm was formed in 2004. Prior to that, the founding partners Larry Cary and Walter Kane had a combined 27 years of experience representing labor unions and employee benefit fans. In addition, partner Charles Pergue has 18 years of experience representing ERISA plans.

29. ERISA makes an award of reasonable attorneys' fees obligatory, not discretionary. *See 29 U.S.C. §§ 1332(g)(2), 1145; La Barbera v. Clestra Hauserman, Inc.* 369 F.3d 224, 226 (2d. Cir. 2004). Courts in the Second Circuit assess fee applications using the "lodestar method," under which a reasonable hourly rate is multiplied by a reasonable number of hours expended. *See Luciano v. Olsten Corp.,* 109 F.3d 111, 115 (2d Cir. 1997); *King v. JC Enters., Inc.,* 325 F. Supp. 2d 162, 166 (E.D.N.Y. 2004)(citing *Green v. Torres,* 361 F.3d 96, 98 (2d Cir. 2004); *Quarantino v. Tiffany & Co.,* 166 F.3d 422,425 (2d Cir. 1999)).

30. In *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* the Second Circuit provided that there are a number of factors to be considered in determining whether an hourly rate is reasonable and held that a district court "bears the burden of disciplining the market" and setting a "reasonable hourly rate" for the services of counsel. 493 F.2d 110, 184 (2d Cir. 2006). A reasonable hourly rate is the rate a "reasonable, paying client" would be willing to pay. *Id.; See also McDaniel v. Cnty. Of Schnectady,* 595 F.3d 411, 420 (2d Cir. 2010)(a presumptively reasonable fee approximates what a "competitive market would bear"); *Manzo v. Sovereign Motor Cars, Ltd.,* 2010 WL 1930237, at*7 (E.D.N.Y. May 11,

2010)(a presumptively reasonable fee "boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case efficiently)(quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)). Reasonable rates are informed in part by the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Ferrara v. All Am. Trucking Servs., Inc.*, 2012 WL 1042936, at *7 (E.D.N.Y. Feb. 17, 2012)(quoting *Blum v. Stenson,* 465 U.S. 886, 889 (1984)). District courts have broad discretion, using "their experience with the case, as well as their experience with the practice of law, to assess the reasonableness" of each component of a few award. *Fox Inds., Inc. v. Gurovich,* 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005)(quoting *Clarke v. Frank,* 960 F.2d 1146, 1153 (2d Cir. 1992)). *Arbor Hill* also held that a district court may use an out-of-district hourly rate in awarding attorneys' fees if it is clear that a reasonable paying client would have paid those higher rates. 493 F.2d at 118.

31. In the instant case, the Funds have made the reasonable decision to retain counsel located in the Southern District based upon counsel's expertise in this area as well the Funds' long history with this firm and its member attorneys. The firm's hourly rate billed to Plaintiffs is a blended rate of $475.00 for both partners and associates and is a consistent rate with the prevailing rates currently charged by attorneys with offices located in the Southern District of New York of comparable skill and experience in these matters. *See Sheehan v. Metropolitan Life Ins.*, 450 F.Supp. 2d 321, 328 (S.D.N.Y. 2006); *Teamster Local 813 Welfare Fund v. Dahill Moving and Storage Co., Inc.*, 2008 U.S. Dist. LEXIS 14717 at *12 (E.D.N.Y. Feb. 7. 2008); *Private Sanitation Union Local 813, I.B.T. v. Gaeta-Serra Assoc, Inc.*, 2005 U.S. Dist LEXIS 42000 at *8 (E.D.N.Y. Aug. 12, 2005) (awarding $275 for senior associate in 2005).

32. I was admitted to the bar in New York in 2008 and to this Court in 2009. I have approximately five years of experience in representing multiemployer benefit plans in ERISA collections lawsuits. I graduated from Boston College and received my law degree from New York Law School. I was an associate attorney at the firm of O'Dwyer & Bernstien LLP from September of 2007 until December of 2010, where I regularly represented multiemployer plans in ERISA collections lawsuits. I continued representing multiemployer plans in ERISA collections lawsuits upon my employment with the firm of Cary Kane LLP in December of 2010.

33. Based on the aforementioned, the legal services rendered to Plaintiffs in this action were reasonable, proper and necessary.

34. In addition to the attorneys' fees, the Funds incurred costs of $477.50 in this litigation, representing the filing fee for the Complaint of $350.00 and the cost of service upon Defendant of the Complaint and Summons in the amount of $127.50. Annexed hereto as Exhibit "H" are true and accurate copies of receipts of the costs of filing and service of the Summons and Complaint incurred by Plaintiffs.

35. The total calculable amount sought at this time, therefore, is $779,810.86 consisting of $632,702.06 in unpaid contributions owed to the Welfare Fund for the period of February through September of 2012 and to the Pension Fund for the period of January through September of 2012, including the accrued interest on those unpaid contributions as of February 25, 2013, liquidated damages in the amount of $119,437.55, attorneys' fees in the amount of $27,193.75, and court costs in the amount of $477.50.

36. Plaintiffs also request the Court to compel Defendant to provide Plaintiffs with their remittance reports for the period of October of 2012 through the date of this judgment. Plaintiffs also request the Court to award them any and all delinquent contributions owed to the Funds by Defendant pursuant to the employer remittance reports for the period of October of

2012 through the date of this judgment, including the liquidated damages and the accrued interest until the judgment is satisfied at the applicable rates.

37.     Lastly, Plaintiffs request the Court to order Defendant to remain current in its contractually stipulated future benefit contributions owed to the Fund.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendant JRS Trucking Services, Inc. as requested above.

*David P. Ofenloch*

Sworn to before me this
26th day of February 2013

*Notary Public*

MELISSA S. CHAN
NOTARY PUBLIC, STATE OF NEW YORK
NO. 02CH6220334
QUALIFIED IN QUEENS COUNTY
COMMISSION EXPIRES APRIL 12, 2014